# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **DAVID HAYES,** )  |  |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil No. 05-1421 (PLF)** |
| ) | |
| **UNITED STATES,** *et al.,* ) | |
| ) | |
| **Defendants.** ) | |
| _____) | |

## DEFENDANT UNITED STATES' MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

Pursuant to Rule 12(b)(1) and (6) of the Federal Rules of Civil Procedure, defendant, United States, on behalf of the National Park Service and the Smithsonian Institution, and by and through its undersigned attorneys, respectfully moves this Court to dismiss this Federal Tort Claims Act case against the United States for lack of subject matter jurisdiction on the unexhausted claim of failure to maintain the Rock Creek Park Trail in safe condition, and because the claim of failure to post adequate signage is excluded from suit by the FTCA's discretionary function exemption. See 28 U.S.C. § 2675(a); 2680(a). In the alternative, defendant moves this Court pursuant to Fed. R. Civ. P. 56(c) for summary judgment, as there is no genuine issue as to any material fact and defendant is entitled to judgment as a matter of law. In support of this motion, the Court is respectfully referred to the accompanying supporting documents, memorandum of points and authorities, and statement of material facts not in dispute. A proposed order consistent with this motion is also attached.

Respectfully submitted,

_____/s/_____
JEFFREY A. TAYLOR , D.C. Bar # 498610
United States Attorney

_____/s/_____
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney


_____/s/_____
CLAIRE WHITAKER, D.C. Bar # 354530
ASSISTANT UNITED STATES ATTORNEY
Office of the U.S. Attorney - District of Columbia
Civil Division
501 3rd Street, 4th Floor
Washington, D.C. 20001
(202) 514-7137


Of Counsel:

Perri Rothemich, Esq
U.S. Department of the Interior
Office of the Solicitor

Christine Nicholson, Esq.
Smithsonian Institution
Office of the General Counsel

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **DAVID HAYES,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil No. 05-1421 (PLF)** |
| | ) | |
| **UNITED STATES,** *et al.,* | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |
| _____ | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
**DEFENDANT UNITED STATES' MOTION TO DISMISS OR,**
<u>**IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**</u>

**I.  <u>Introduction</u>**

Plaintiff's cause of action arises under the Federal Tort Claims Act ("FTCA"), 28

U.S.C. §§2671 <u>et seq</u>., and is based on his bare allegations that he had a bicycle accident and was

injured near a closed gate of the National Zoo on the Rock Creek Trail on Christmas Day 2003.

There are no identified witnesses to the accident. R. 1, Exhibit A.  In his complaint, plaintiff

makes two claims.   He claims the path was negligently maintained.  R. 1 at ¶ 12(a).  And he also

claims there were no warning signs close to the gate and, therefore, he did not see the gate in

time to avoid his accident. <u>Id</u>. at ¶ 12(b)-(d).  Hence, he claims that the United States was

negligent for the failure to maintain and the failure to warn trail users of a dangerous condition.

A close scrutiny, however, of plaintiff's administrative claim presented to the agency, his

complaint before this Court, and documents produced during discovery, coupled with a review

of applicable legal standards and material facts that are not in dispute, reveal a case that, in its

entirety, is appropriate for summary disposition.  First, plaintiff did not exhaust his negligent

maintenance claim during the administrative proceedings with regard to his claim of failure to

maintain the property in safe repair.  See R. 1, at ¶ 12(a).  Even if he did exhaust this claim, it is

barred by the discretionary function exception of the FTCA.  28 U.S.C. § 2680(a).  Second, the

placement of warning signs is also a discretionary function and as such is exempt from the

waiver of sovereign immunity found in the FTCA.  Accordingly, plaintiff's claims of failure to

warn and failure to maintain the property in safe repair are subject to dismissal or summary

judgment.

## II.  Factual Background

The Court is respectfully referred to the attached Statement of Material Facts Not in

Dispute.  Briefly stated, the facts are as follows:

On December 25, 2003, plaintiff allegedly was involved in a bicycle accident on the

Rock Creek Park Trail near a gate into the National Zoo (or "zoo").  Exhibit 1, hereto.

On February 2, 2004, the Office of the Superintendent for the Rock Creek National Park,

National Park Service ("NPS"), U.S. Department of the Interior, received a letter from plaintiff's

mother, Barbara Hayes, regarding a bicycle accident allegedly involving her son on the Rock

Creek Park Trail and complaining about the lack of signs warning that the gate was closed.  See

Declaration of Adrienne Coleman, Superintendent of the Rock Creek National Park, NPS, U.S.

Department of the Interior ("Coleman Decl.").  Id.; Exhibit 2 at ¶ 16, thereto.  The gate is the

property of the National Zoo.  Coleman Decl. at ¶ 17.  As the NPS Superintendent believed that

the complaint involved the National Zoo, rather than the NPS, she referred Ms. Hayes to the

Smithsonian Institution as that agency oversees the Zoo. Id.

On November 5, 2004, plaintiff filed a Standard Form 95, Administrative Claim with the

Smithsonian Institution ("SI") for injuries he allegedly sustained on December 25, 2003.  Exhibit

3, hereto.  The basis for his claim as reflected on the Administration Claim form is:

> I was riding my bicycle on a trip going out on the Capital Crescent Trail and
> return via Rock Creek Park.  While on the Rock Creek Park trail, when I reached
> the National Zoo, I approached a tunnel, but the paved trail curved around the
> tunnel.  I followed the trail around the curve but there was a gate across the trail.
> There were no markings or warning signs that the trail was blocked and, in my
> effort to stop before smashing into the gate, I hurtled over the front of my bicycle.
> The only warning sign (stating that the gate is closed on Christmas and during
> inclement weather) was on the gate itself which is useless for bike riders who
> were coming around the curve toward the gate.  I sustained a complex fracture of
> my wrist, bruises on my face and head and scrapes.  I have incurred over $20,000
> in medical, hospital and surgical expenses and have had pins, plates and screws
> installed in my right wrist and still have loss of function and heightened
> sensitivity (strong tingling sensation) in the wrist and believe these injuries may
> be permanent.

Id.; see also R. 1, Exhibit A.  On April 26, 2005, the claim was denied by the SI. R.

1, Exhibit B, see also Exhibit 4, hereto.

On July 19, 2005, plaintiff filed the instant civil action, alleging that defendant was

negligent in the following respects:

> (a)  Failure to inspect and maintain the property in a reasonable manner.
>
> (b)  Failure to post reasonable and adequate warning signs and other devices regarding
>       the gate closing and its obstruction of the bicycle path.
>
> (c)  Failure to paint the gate or otherwise mark or alter the gate's appearance when
>       closed, so as to adequately warn users of the bicycle path.
>
> (d)  Failure to include warnings on the bicycle path of the presence of the gate and its
>       obstruction of the bicycle path, and
>
> (e)  Was otherwise negligent.

R. 1, Complaint at ¶ 12.

As more fully set forth herein and in the attached declaration of Ms. Coleman, the NPS

vests its superintendents and other decision-makers at the park level with the discretion to make

decisions relating to public safety, including "decisions about whether to install warning signs or

artificial light; distribute weather warnings or advisories; . . . close roads and trails, or install

guardrails and fences. . ." Coleman Decl. at ¶ 9.  Ms Coleman "balances the safety of park visitors, [with] the aesthetics of the surrounding areas, the potential for environmental impact or damage, the harmony of the park environment, and the available funds" when deciding what maintenance is performed and where and if signs are to be installed.  Id. at ¶ 10.  In so doing, she uses the National Park Service Sign Manual as guidance and also takes into account such matters as "engineering judgment, the aesthetics of the physical surroundings of the area in question, natural and historic features [and], the park visitors' enjoyment . . ." Id. at ¶ 11.  The Sign Manual provides that "the individual park manager . . . has the responsibility for determining whether or not a sign is necessary or appropriate at a given location." Id. at ¶ 13.  In sum, the NPS's policy is for the park manager to use his or her professional judgment "to intrude only minimally upon the natural or historic setting and to avoid a proliferation of signs."  Id. at 14; see also ¶ 15.  Relevant provisions of the Sign Manual are attached at Exhibit 6.

Moreover, the Rock Creek Park Trail is designed to abide by the purpose of the NPS, to "conserve the scenery and the natural and historic objects and the wild life therein and to provide for the enjoyment of the same in such manner and by such means as will leave them unimpaired for the enjoyment of future generations."  Coleman Decl. at ¶ 2 (citing 16 U.S.C. § 1).  The trail is designed and intended for the use of all park visitors, not just bicyclists.  Id. at ¶ 4.  "Motor vehicle[s], including automobiles, motorbikes, and motorcycles are not permitted on the Trail. Its use is limited to recreational activities." Id. at 5.

The gate upon which was posted the sign that plaintiff refers to in his complaint is operated by the National Zoo, which is part of the Smithsonian Institution. See Exhibit 5, hereto, Declaration of James F. Hilton, Safety and Occupational Health Manager for the National Zoological Park, SI ("Hilton Decl."), ¶ 2.   The gate is large – 9 feet tall and 10 feet wide.  Id. at

4

¶ 2.  The gate was replaced with a new gate after the accident, in 2004, for reasons unrelated to the accident.  Id. at ¶ 3.  The new gate (and a new fence) were funded by federal money made available to the Smithsonian Institution for security upgrades after 9/11.  Id.  The gate in question must be closed and locked in order to secure the National Zoo grounds.  Id. at ¶ 7.

With regard to the placement of signs on Zoo property, the management of the National Zoo has full discretion as to what signs to post on the gate and on Zoo property generally.  Id. at ¶ 4.  In exercising their discretion, Zoo officials develop and post whatever signs they deem necessary to protect the public, the zoo, and its staff.  Id. at 5.  Zoo officials take into account various policy considerations, such as (a) the prevention of potential terrorist acts, (b) the safety of trail users, zoo visitors and employees, (c) the protection of zoo animals, buildings, and grounds from intruders, (d) the protection of the public from unsecured zoo animals, (e) the availability of funds, and (f) the aesthetics of the zoological park.  Id.  The National Zoo has not adopted formal standards for sign placement.  Id. at ¶ 6.  Signs generally are approved by management-level employees, including the Safety Manager, the Deputy Director, the Zoo's Chief of Police, and the Director of the Friends of the National Zoo.  Id.

On the date of the accident and for several years prior to the accident, the gate in issue had a sign posted on it indicating the hours the zoo grounds are open and that the zoo is closed on December 25.  Id. at ¶ 9.  On the day of the accident – December 25 – the zoo was closed and the zoo gates were closed.  Id. at ¶ 8.  As plaintiff bicycled toward the closed gate in issue, he rode past the Zoo's Beach Drive gate, which is a larger gate located approximately 315 yards from the gate in issue.  Id. at ¶ 10.  On the date of the accident and for years prior to the accident, a sign was posted next to the gate indicating what hours the zoo grounds are open and that the zoo is closed on December 25.  Id.  The Office of the Director establishes opening and closing

times for the Zoo.  The decision to close on Christmas Day is a Smithsonian-wide policy.  <u>Id</u>. at ¶ 11.

### III. <u>ARGUMENT</u>

#### A.  STANDARD OF REVIEW

##### 1.  <u>Fed. R. Civ. P. 12(b)(1).</u>

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), the plaintiff bears the burden of establishing that the court has subject-matter jurisdiction. <u>Natural Resources Def. Council v. Johnson</u>, 422 F. Supp. 2d 105, 110 (D.D.C .2006) (*citing* <u>Lujan v. Defenders of Wildlife,</u> 504 U.S. 555, 561 (1992)); <u>Macharia v. United States</u>, 334 F.3d 61, 67 (D.C. Cir. 2003).  When evaluating a Rule 12(b)(1) motion, the Court may treat the defendant's jurisdictional argument as a "factual challenge" to jurisdiction.  <u>See</u> <u>Macharia</u>, 334 F.3d at 64, 67-68.  Accordingly, the plaintiff must demonstrate through affidavits and other testimony that the court has jurisdiction. <u>Macharia</u>, <u>Id</u>. at 67; <u>see</u> <u>also</u> <u>Mountain States Legal Found. v. Bush</u>, 306 F.3d 1132, 1134 (D.C. Cir. 2002).  The Court may consider material outside of the pleadings in its effort to determine whether the Court has jurisdiction. <u>Calloway v. Brownlee</u>, 366 F. Supp. 2d 43, 49 (D.D.C. 2005).  At all times, "[on] a motion to dismiss pursuant to Rule 12(b)(1), the plaintiff bears the burden of persuasion to establish subject-matter jurisdiction by a preponderance of the evidence."   <u>Thompson v. Capitol Police Bd.</u>, 120 F. Supp. 2d 78, 81 (D.D.C. 2000).

##### 2.  <u>Fed. Civ. P. 12(b)(6).</u>

Rule 12(b)(6) provides for dismissal of a lawsuit wherein the plaintiff fails to state a claim upon which relief can be based.  A motion to dismiss brought pursuant to Rule 12(b)(6) should be granted if it is beyond doubt that the plaintiff can demonstrate no set of facts that

supports his claim entitling him to relief.  See Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see

Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1117 (D.C. Cir. 2000).

### 3.  Fed. R. Civ. P. 56(c).

Under Fed. R. Civ. P. 56, a motion for summary judgment shall be granted if the

pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that

there is no genuine issue of material fact, and that the moving party is entitled to judgment as a

matter of law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).   In considering a

motion for summary judgment, the "evidence of the non-movant is to be believed, and all

justifiable inferences are to be drawn in his favor."  Id. at 255.  The non-moving party's

opposition must consist of more than mere unsupported allegations or denials and must be

supported by affidavits or other competent evidence setting forth specific facts showing that

there is a genuine issue for trial. Fed. R. Civ. P. 56(e); Celotex Corp. v. Catrett, 477 U.S. 317,

324 (1986). The non-moving party must provide evidence that would permit a reasonable jury to

find in the non-moving party's favor.  Laningham v. U.S. Navy, 813 F.2d 1236, 1241 (D.C.

Cir.1987). "If the evidence is merely colorable, or is not significantly probative, summary

judgment may be granted." Liberty Lobby, 477 U.S. at 249.

### B.  PLAINTIFF FAILED TO RAISE NEGLIGENT MAINTENANCE OF THE TRAIL IN HIS ADMINISTRATIVE CLAIM BEFORE THE AGENCY.

Sovereign immunity bars all suits against the United States except in accordance with the

explicit terms of statutory waiver of such immunity.  United States v. Nordic Village, Inc., 503

U.S. 30, 32-34, 37 (1990) ("[w]aivers of the Government's sovereign immunity, to be effective,

must be 'unequivocally expressed'"), quoting Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 95

(1990); United States v. Mitchell, 445 U.S. 535, 538 (1980); United States v. Testan,  424 U.S.

392, 399 (1976)).  A waiver of sovereign immunity must be strictly construed in favor of the

United States.  Ardestani v. INS, 502 U.S. 129, 137 (1991) (citing Library of Congress v. Shaw,

478 U.S. 310, 318 (1986) and Ruckelshaus v. Sierra Club, 463 U.S. 680, 685 (1986); see also

Department of the Army v. FLRA, 56 F.3d 273, 277 (D.C. Cir. 1995) ("the statutory waiver

provision must unambiguously establish that it extends to the award of money damages"); Haase

v. Sessions, 893 F.2d 370, 373 (D.C. Cir. 1990) ("waivers of sovereign immunity, the Supreme

Court has repeatedly reminded us, must be narrowly construed").  Absent the plaintiff's full

compliance with the conditions for a waiver of immunity, the Court lacks jurisdiction to

entertain a tort claim against the United States.  GAF Corp. v. United States, 818 F.2d 901, 904

and n.86 (D.C. Cir. 1987); see also Simpkins v. District of Columbia Government, 108 F.3d 366,

371 (D.C. Cir. 1997); Jackson v. United States, 730 F.2d 808, 809 (D.C. Cir. 1984).

> One such condition is contained in the Federal Tort Claims Act, which provides:

>> An action shall not be instituted upon a claim against the United
>> States for money damages for injury or loss of property or personal
>> injury or death caused by the negligent or wrongful act or omission
>> of any employee of the Government while acting within the scope
>> of his employment, unless the claimant shall have first presented
>> the claim to the appropriate Federal agency and his claim shall
>> have been finally denied . . .

> 28 U.S.C. § 2675(a); see GAF Corp. v. United States, 818 F.2d at 904 n. 7.

> Plaintiff has failed to submit an administrative tort claim with regard to his claim of

defendant's failure to inspect and maintain the property in a reasonable manner.  See R. 1 at ¶

12(a).  Accordingly, this claim is subject to dismissal on jurisdictional grounds.  See McNeil v.

United States, 508 U.S. 106, 113 (1993).

> A review of plaintiff's administrative claim submitted to the Smithsonian Institution in

2004 [R.1, Ex. A], demonstrates he presented only a claim for the alleged negligence in failing

to place sufficient warning signs along the Rock Creek Park Trail and, inferentially, on the gate

into the National Zoo.  <u>See</u> Exhibit 3.  He made no claim of negligent inspection and maintenance of the trail itself.  The pertinent language of plaintiff's administrative claim shows he limited his claim to a "failure to warn:"

> I was riding my bicycle on a trip going out on the Capital Crescent Trail and returning via Rock Creek Park.  While on the Rock Creek Part trail, when I reached the National Zoo, I approached a tunnel, but the paved trail curved around the tunnel.  I followed the trail around the curve but there was a gate across the trail.  **There were no markings or warning signs that the trail was blocked and, in my effort to stop before smashing into the gate, I hurled over the front of my bicycle.  The only warning sign (stating that the gate is closed on Christmas and during inclement weather) was on the gate itself which is useless for bike riders who were coming around the curve toward the gate.**

<u>Id</u>. (emphasis supplied).

The FTCA requires that the plaintiff provide sufficient notice of the claim to "enable the agency to investigate and ascertain the strength of [the] claim." <u>GAF Corp. v. United States</u>, 818 F.2d at 920.  Investigating a claim of negligent maintenance of the bike path's physical condition, as newly alleged by plaintiff, is a far different exercise than determining whether the placement of warning signs was a negligent act.  The allegations in Mr. Hayes' administrative claim, therefore, did not provide sufficient notice of the FTCA to permit this claim to proceed in his complaint.

Plaintiff was keenly aware of the fact that the claim was treated as a negligence claim directed to the posting of signs warning of the closure of the gate to the National Zoo, and nothing more, as he [through his mother] originally made his claim known to the National Park Service.  <u>See</u> Exhibit 1 (Letter from Ms. Hayes dated 2/2/04).  The National Park Service referred the claim to the Smithsonian Institution which administers the National Zoo and operates the gate.  <u>See</u> Exhibit 7 (Letter from the National Park Service dated 2/20/04, to Ms.

9

Hayes).  At no time before he presented his administrative claim (the SF-95) to the agency (or

filed his complaint herein) did plaintiff make a claim against the United States for negligent

inspection or maintenance of the trail itself.  Accordingly, the presentment requirement of this

claim was not met.  See Bembenista, et al., v. United States, 866 F.2d 493, 499 (D.C. Cir. 1989).

C.  **THE FTCA'S DISCRETIONARY FUNCTION EXCEPTION APPLIES TO
IMMUNIZE THE NPS AND THE SMITHSONIAN FROM CLAIMS OF
NEGLIGENT MAINTENANCE (NPS) AND NEGLIGENT PLACEMENT
OF SIGNS ALONG THE PATH (NPS) AND ON THE GATE (SI)**.

The FTCA's waiver of sovereign immunity is also limited by the discretionary function

exception, which bars claims:

> based upon an act or omission of an employee of the Government
> ….based upon the exercise or performance or the failure to exercise or
> perform a discretionary function or duty on the part of a federal agency or an
> employee of the Government, whether or not the discretion involved be
> abused.

28 U.S.C. §2680(a).

This exception "restores the government's immunity in situations where its employees are

carrying out governmental or 'regulatory' duties," Faber v. United States, 56 F.3d 1122, 1124

(9th Cir. 1995), and it "marks the boundary between Congress' willingness to impose tort

liability on the United States and the desire to protect certain decision-making from judicial

second-guessing." Berkovitz v. United States, 486 U.S. 531, 536-37 (1988).   In this case, it

immunizes both the National Park Service and the Smithsonian Institution from liability as more

fully set forth below.

1.  The Gaubert-Berkovitz Test.

The Supreme Court, in United States v. Gaubert, 499 U.S. 315 (1991) and Berkovitz v.

United States, supra, enunciated a two-part test for determining what conduct falls within the

reach of the discretionary function exception. First, is the conduct discretionary?  Second, is the discretion policy-driven?

### a.  The Discretionary Prong.

To be discretionary, the Court must determine "whether the challenged actions involve 'an element of judgment or choice.'"  United States v. Gaubert, 499 U.S. at 322.  The discretionary element is not met where "a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow." Berkovitz, 486 U.S. at 536.  If an element of discretion is found, then there must next be determined whether the judgment is of the kind that the discretionary function exception is designed to shield.  Gaubert, 499 U.S. at 322-23.

### b.  The Public Policy Prong.

In addition, the discretionary function exception requires the discretionary governmental action to be based on considerations of public policy.  Id. "Public policy" has specifically been held to encompass decisions made by the National Park Service regarding the implementation of safety considerations on park trails, where circumstances established the NPS decisions were a result of judgment grounded in social, economic, and political policy.  See Baum v. United States, 986 F.2d at 716, 724 (4th Cir. 1993); Bowman v. U.S., 820 F.2d 1393, 1395 (4th Cir. 1987); Valdez v. United States, 56 F.3d 1177, 1179-1180 (9th Cir. 1995); Soldano v. United States, 453 F.3d 1140, 1146-47 (9th Cir. 2006); Childers v. United States, 40 F.3d 973, 174-76 (9th Cir. 1994).  This involves a balancing of competing concerns. Loughlin v. United States, 393 F.3d 155, 164 (D.C. Cir. 2004).

When undertaking this policy analysis, the court looks to whether the United States' actions are "susceptible to a policy analysis." Gaubert, 499 U.S. at 325.  It is the *nature* of the

conduct that is relevant and not the status of the actor, that governs the applicability of the

exception.  Id.  In this regard, a reviewing court "is to look to the nature of the challenged

decision in an objective, or general sense, and ask whether that decision is one which we would

expect inherently to be grounded in considerations of policy." Baum v. United States, 986 F.2d

at 721.

        If the challenged discretionary conduct is of the nature and quality that Congress

intended to protect, then the discretionary function exception applies, even if plaintiff can prove

negligence.  This principle is compelled by the language of the discretionary function exception,

which applies regardless of "whether or not the discretion involved be abused."  28 U.S.C.

§2680(a); see Mitchell v. U.S., 787 F.2d 466, 468 (9th Cir. 1986); Golden Pacific Bancorp. V.

Clarke, 837 F.2d 509, 511 (D.C. Cir. 1998).

        Should the Court determine that plaintiff has exhausted his claim concerning the

inspection and maintenance of the Rock Creek Park Trail, which defendant does not concede he

has, under well-settled discretionary function exception analysis, such discretionary, policy-

based maintenance decisions are undeniably protected by §2680(a). See Gaubert; United States

v. S.A. Empresade Viacao Aerea Rio Grandense (Varig Airlines), 467 U.S. 797, 814 (1984)

("second-guessing" of judgments involving balancing of policy issues should not be permitted);

Wells v. United States, 851 F.2d 1471 (D.C. Cir. 1988) (discretionary function exception

precludes suit for EPA negligence in regulating and communicating knowledge of public health

risks and lead pollution dangers where decision to conduct further study instead of taking

immediate remedial action based in part on budgetary considerations). See infra at 2 & 3.

2.   The Maintenance of the Rock Creek Park Trail is
     <u>Protected by the Discretionary Function Exception</u>

Maintenance of the Rock Creek Park Trail is scheduled and performed as needed. Coleman Decl. at ¶ 10.  Maintenance is based on policy considerations such as aesthetics and environmental concerns.  <u>Id</u>.  Moreover, because the NPS has limited available funds and repairs could cripple the operating budget of the Rock Creek Park and/or prevent the allocation of funds for other projects needing immediate attention, the Superintendent has discretion to determine which repairs to make and when to make them.  <u>Id</u>. at ¶¶ 8-10.  Decisions concerning when and if facilities owned by the government should be maintained are inherently discretionary in the absence of a specific mandatory directive.  This is the kind of daily decision involving choice and judgment that is necessarily made incident to the smooth running of the government.

Trails in the National Parks are designed to preserve the natural beauty of the area and to permit its enjoyment, consistent with the policy to conserve scenery, natural and historic objects, and wildlife, and to provide for their enjoyment in such a manner as to leave them unimpaired for the enjoyment of future generations.  <u>See</u> 16 U.S.C. §1.  National Park Service's policies are to intrude only minimally upon the natural or historic setting of its parks and to avoid a proliferation of signs.  Coleman Decl. at ¶ 14.  The policy considerations involve aesthetic considerations, environmental factors, the need for harmony of the park environment, cost issues and safety.  <u>See Id</u>. at ¶¶ 10-11.  The trail at issue here, in its present form, complies with these policy objectives in the way it follows Rock Creek and permits enjoyment of the natural surroundings.  The trail existed before the Park did, and is intended for the use of all Park visitors, not just bikers.  There are no mandatory standards or requirements that govern the trail. Thus, the inspection and maintenance of the trail come squarely within the protection of the

13

discretionary function exception.  See, Gaubert, 499 U.S. at 325; Varig Airlines, 467 U.S. 797, 820 (1984); Bowman, 820 F.2d at 1395.

Accordingly, defendant respectfully submits that the Court should find that any claims based on failure to inspect and maintain Rock Creek Park Trail– however they may be characterized or mischaracterized by the plaintiff– are plainly insulated by section 2680(a) from an action sounding in tort.

3. The Placement of Signs Along Rock Creek Park Trail and On<br/>the Gate is Protected by the Discretionary Function Exception

The NPS and SI's decisions concerning signs are also discretionary, as public policy considerations were involved.

a.  NPS Discretion and Policy Considerations.

The placement and use of signs in Rock Creek Park is governed by NPS policy which is outlined in the 1988 "National Park Service Sign Manual."  The Sign Manual sets forth some factors the individual park manager should consider regarding the placement of signs.  However, the Manual grants discretion to individual NPS park managers to determine where and what signs should be placed to insure that in the posting of signs there is minimal intrusion upon the natural and historical setting of their parks.  Exhibit 6, Excerpts from "National Park Service Sign Manual" at p.1-1.  The decision to utilize a particular sign at a particular location requires both the professional judgment of the park manager – drawing upon available guides, resources, and traffic safety engineering expertise- and considering a variety of other factors, such as the appearance of the road as a whole and its relationship to the natural and/or historical environment through which it passes."  Id.

The National Park Service Sign Manual continues:

It is important in this regard, too, that such decisions bear in mind

14

> long standing National Park Service policy to minimally intrude upon
> the natural or historic setting of the National Park System areas, and to
> avoid an unnecessary proliferation of signs, while striving to ensure for
> the safety of park visitors.

Id. at Exhibit 6.

The Sign Manual does not explicitly require the posting of signs in certain situations, nor does it designate the exact locations or the manner in which to determine the location of signs. The Sign Manual therefore clearly reflects that decisions about the use of signs are to be made at the discretion of the park manager. The NPS policy regarding the posting of signs involves an element of judgment or choice that must be exercised by the park manager. Kahan v. United States, 73 F. Supp. 2d 1172, 1176-77 (D. Hawaii 1999).

The NPS weighs policy considerations in applying its discretion with respect to the posting of signs. The National Park Service balanced competing policy concerns in determining whether and how to warn of hazards associated with bicycle riding in Rock Creek Park. As found by the Court in Kahan, the guidelines quoted above identify "policies of minimal intrusion upon the natural or historic setting in National Park System areas, avoidance of unnecessary proliferation of signs, and a commitment to provide for the safety of park visitors." Id. at 1178. It is undisputed that decisions concerning signage—including what kind of sign to use—in Rock Creek Park are intertwined with policy considerations concerning engineering judgment, physical surroundings, natural and historic features, and the park visitors' enjoyment and appreciation. See Coleman Decl. at ¶ 11.

The evidence in this case shows the placement of signs on Rock Creek Park Trail is discretionary, implicates social concerns and safety issues, would intrude upon the natural setting of the historic trail, create safety issues, and detract from the aesthetic resources along the Trail. See Coleman Decl. at ¶¶ 2, 5, 8, 11.

b. <u>SI's Discretion and Policy Considerations.</u>

Decisions concerning the placement of signs on Zoo property are not governed by a specific manual. Zoo and Smithsonian Institution officials have complete discretion to establish hours for the zoo and to post whatever signs they deem necessary in order to protect the public, the zoo, and its staff. Hilton Affidavit at ¶ 5 and ¶ 11. The gate in question is closed and locked when the Zoo is closed in order to secure the National Zoo grounds. <u>Id</u>. at ¶ 7.

Closing the gate at night and on Christmas Day, posting signs to implement this policy, and balancing the safety issues of trail users with the protection and preservation of the zoo and its operations involve a myriad of policy considerations. Zoo officials must balance the prevention of potential terrorist acts, the safety of trail users, zoo visitors and employees, the protection of zoo animals, buildings, and grounds from intruders, the protection of the public from unsecured zoo animals, the availability of funds, and the aesthetics of the zoological park when making decisions about signage. <u>Id</u>. at ¶ 5. In sum, like the NPS, the SI considers policy concerns in making its decisions about the placement of signs. <u>See</u> Hilton Decl. at ¶¶ 2, 4, 5.

The warning signs and other warnings and barriers demanded by the plaintiff in his Complaint are inconsistent with the NPS and SI's policies, which in part discourage the posting of unnecessary signage. The gate at issue is large – 9 feet tall and 10 feet wide – <u>Id</u>. at ¶ 2 and therefore easily visible. A sign was (and still is) posted indicating the Zoo is closed on December 25th. <u>Id</u>. at ¶ 9. The discretionary function exception applies to this case and precludes liability against the Government for plaintiff's injuries.

Numerous courts have addressed the applicability of the discretionary function exception to the placement of signs in national parks and have found it appropriately applied. For example, in <u>Rosebush v. United States</u>, 119 F.3d 438, 443 (6th Cir. 1997), the Sixth Circuit held

that the Forest Service's failure to warn of possible campfires when using fire pits was protected by the discretionary function exception. In <u>Clark v. United States</u>, 898 F2d 156 (Table), 1990 WL 31563 (C.A.9 (Ariz.)), <u>cert. denied</u>, 499 U.S. 946 (1991), the court found that the Forest Service's failure to post warning signs alerting visitors of the dangers of flash floods was protected by the discretionary function exemption. In <u>Bowman v. United States</u>, <u>supra</u>, the Fourth Circuit held that the design and use of man-made objects, such as guardrails and signs, are subject to the discretionary function exception. In so holding, the court stated that "National Park Service officials have more than safety in mind in determining the design and use of man-made objects such as guardrails and signs. . . These decisions require balancing many factors: safety, aesthetics, environmental impact and available financial resources." 820 F.2d at 1395. In <u>Soldano v. United States,</u> 453 F.3d 1140 (9th Cir. 2006), the Ninth Circuit held that the design of a park road without warning signs was shielded by the discretionary function exception.

In <u>Valdez v. United States</u>, 56 F.3d 1177 (9th Cir. 1995) the plaintiff injured himself when he slipped and fell over Ella Falls in Kings Canon National Park. The plaintiff alleged that the accident was caused by the negligent failure of the National Park Service to place warning signs. The Ninth Circuit upheld the District Judge's decision that the alleged lack of warning signs was protected by the discretionary function exception. Similarly, in <u>Childers v. United States</u>, 40 F.3d 973 (9th Cir. 1994), the Ninth Circuit held that the statute (16 U.S.C. §1) and procedures under which National Park Service employees operate in determining whether to post signs and close trails requires significant discretion and judgment. In <u>Fahl v. United States</u>, 792 F. Supp. 80 (D. Ariz. 1992), the Court held that the National Park Service's decisions in Grand Canyon National Park about whether and where to place warning signs, lights and guardrails were matters of choice left to the National Park Service under the policy mandate of 16 U.S.C. §1.

In <u>Blackburn v. United States</u>, 100 F.3d 1426 (9th Cir. 1996), the Ninth Circuit held that the discretionary function exception barred a plaintiff's claim that the NPS negligently failed to warn of the danger of diving off a bridge in Yosemite National Park.

This Circuit recently confronted the issue involving the application of the discretionary function exemption of the FTCA to Beach Drive, a commuter thoroughfare in Rock Creek Park, in <u>Cope v. Scott</u>, 45 F.3d 445, 451 (D.C. Cir. 1995), a case easily distinguishable from the instant case. In <u>Cope</u>, the plaintiff sued for injuries suffered in a traffic accident that occurred on Beach Drive, a road that runs through Rock Creek Park and is maintained by the National Park Service. <u>Id.</u> The Court in <u>Cope</u> found, in the context of a vehicle parkway in Washington, D.C., that aesthetic considerations were secondary to the need to control traffic by signage. The Court observed that "Beach Drive is not the Grand Canyon's Rim Drive, nor Shenandoah's Skyline Drive," as evidenced in part by the numerous traffic signs along the road. <u>Id.</u> In the instant case, the Rock Creek Park Trail is not a traffic thoroughfare, cars are prohibited. <u>See</u> Coleman Decl. at ¶ 5 ("Motor vehicle [sic], including automobiles, motorbikes, and motorcycles are not permitted on the Trail."). The Trail's aesthetic importance is akin to the Grand Canyon's Rim Drive or the Shenandoah's Skyline Drive.[1]

For the foregoing reasons, defendant respectfully requests this Court to follow precedent established by the numerous circuits and dismiss plaintiff's case with prejudice.

## IV.  <u>CONCLUSION</u>

For the foregoing reasons, the United States respectfully requests that its Motion to Dismiss Or, in the Alternative, for Summary Judgment be granted.

---

[1]Moreover, there is no evidence in the record that it is a vehicle-based, heavily traveled commuter route within a city as there was in <u>Cope</u>.

Respectfully submitted,

_____/s/_____
JEFFREY A. TAYLOR , D.C. Bar # 498610
United States Attorney


_____/s/_____
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney


_____/s/_____
CLAIRE WHITAKER, D.C. Bar # 354530
ASSISTANT UNITED STATES ATTORNEY
Office of the U.S. Attorney - District f Columbia
Civil Division
501 3rd Street, 4th Floor
Washington, D.C. 20001
(202) 514-7137

Of Counsel:

Perri Rothemich, Esq
U.S. Department of the Interior
Office of the Solicitor

Christine Nicholson, Esq.
Smithsonian Institution
Office of the General Counsel

19

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| DAVID HAYES, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil No. 05-1421 (PLF) |
| | ) | |
| UNITED STATES, *et al.,* | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| _____ | ) | |

**DEFENDANT UNITED STATES' STATEMENT OF
MATERIAL FACTS TO WHICH THERE IS NO GENUINE DISPUTE**

Pursuant to Local Rule 7(h), defendant United States hereby submits the following statement of material facts as to which there is no genuine dispute.

1.  On February 2, 2004, the Office of the Superintendent for the Rock Creek National Park, National Park Service ("NPS"), U.S. Department of the Interior, received a letter from plaintiff's mother, Barbara Hayes, regarding a bicycle accident involving her son on the Rock Creek Park Trail and complaining about the lack of warning signs. See Declaration of Adrienne Coleman, Superintendent of the Rock Creek National Park, NPS, U.S. Department of the Interior ("Coleman Decl.").  Exhibit 1 and Exhibit 2, hereto, at ¶ 16.

2.  The gate was under the control and operated by the National Zoo.  See Exhibit 5, hereto, Declaration of James F. Hilton, Safety and Occupational Health Manager for the National Zoological Park, Smithsonian Institution ("SI") ("Hilton Decl."), ¶ 2.

3.  The Superintendent for the Rock Creek National Park forwarded Ms. Hayes letter to the Smithsonian Institution as that agency oversees the Zoo and the subject gate.  Exhibit 2 (Coleman Decl.) at ¶ 17 and Attachment 7.

4.  On November 5, 2004, plaintiff filed an Standard Form 95, Administrative Claim with the Smithsonian Institution for injuries he allegedly sustained on December 25, 2003.  The basis for his claim as reflected on the Administration Claim form is:

> I was riding my bicycle on a trip going out on the Capital Crescent Trial and return via Rock Creek Park.  While on the Rock Creek Park trail, when I reached the National Zoo, I approached a tunnel, but the paved trail curved around the tunnel.  I followed the trail around the curve but there was a gate across the trail.  There were no markings or warning signs that the trail was blocked and, in my effort to stop before smashing into the gate, I hurtled over the front of my bicycle.  The only warning sign (stating that the gate is closed on Christmas and during inclement weather) was on the gate itself which is useless for biker riders who were coming around the curve toward the gate.  I sustained a complex fracture of my wrist, bruises on my face and head and scrapes.  I have incurred over $20,000 in medical, hospital and surgical expenses and have had pins, plates and screws installed in my right wrist and still have loss of function and heightened sensitivity (strong tingling sensation) in the wrist and believe these injuries may be permanent.

R. 1, Exhibit A, see also Exhibit 3, hereto.

5.  On April 26, 2005, the claim was denied by the SI. R. 1, Exhibit B, see Exhibit 4, hereto.

6.  On July 19, 2005, plaintiff filed the instant civil action, alleging that defendant was negligent in the following respects:

(a)  Failure to inspect and maintain the property in a reasonable manner.

(b)  Failure to post reasonable and adequate warning signs and other devices regarding the gate closing and its obstruction of the bicycle path.

(c)  Failure to paint the gate or otherwise mark or alter the gate's appearance when closed, so as to adequately warn users of the bicycle path.

(d)  Failure to include warnings on the bicycle path of the presence of the gate and its obstruction of the bicycle path, and

(e)  Was otherwise negligent.

R. 1, Complaint at ¶ 12.

7.  The NPS vests the superintendents and other decision-makers at the park level with the discretion to make decisions relating to public safety, including "decisions about whether to install warning signs or artificial light; distribute weather warnings or advisories; . . . close roads and trails, or install guardrails and fences. . ." Coleman Decl. at ¶ 9.  "We [NPS decision-makers] balance the safety of park visitors, [with] the aesthetics of the surrounding areas, the potential for environmental impact or damage, the harmony of the park environment, and the available funds" when deciding what maintenance is performed and where and if signs are to be installed. Id. at ¶ 10.

8.  In deciding whether or not to place a warning sign, Ms. Coleman refers to the National Park Service Sign Manual as guidance and also takes into account such matters as "engineering judgment, the aesthetics of the physical surroundings of the area question, natural and historic features [and], the park visitors' enjoyment . . ."  Id. at ¶ 11.

9.  The Sign Manual provides that "the individual park manager . . . has the responsibility for determining whether or not a sign is necessary or appropriate at a given location. . ." Id. at ¶ 12.  In sum, the NPS's policy is for the park manager to use his or her professional judgment "to intrude only minimally upon the natural or historic setting and to avoid a proliferation of signs . . ." Id.; see also ¶ 14.

10.  "The Rock Creek Park Trail [completed prior to 1980] is designed to abide by the purpose of the [NPS]: . . to conserve the scenery and the natural and historic objects and the wild life therein and to provide for the enjoyment of the same in such manner and by such means as will leave them unimpaired for the enjoyment of future generations." Coleman Decl. at ¶ 2 (citing 16 U.S.C. § 1); see also ¶ 3.

3

11.  The Trail is a multi-use trail, meaning it was designed and is intended for the use of all park visitors, not just bicyclists. Id. at ¶ 4.  "Motor vehicle[s], including automobiles, motorbikes, and motorcycles are not permitted on the Trail.  Its use is limited to recreational activities." Id.

12.  The gate, upon which was posted the sign that plaintiff refers to in his complaint, is operated by the National Zoo, which is part of the Smithsonian Institution ("SI"). See Exhibit 5, hereto, Hilton Decl., ¶ 2.   The gate is approximately 9 feet tall and 10 feet wide.

13.  The management of the National Zoo has full discretion as to what signs to post on the gate and on Zoo property generally. Id. at ¶¶ 4 and 5.

14.  In exercising their discretion, zoo officials develop and post whatever signs they deem necessary to protect the public, the zoo, and its staff.  Zoo officials take into account various policy considerations, such as (a) the prevention of potential terrorist acts, (b) the safety of trail users, zoo visitors and employees, (c) the protection of zoo animals, buildings, and grounds from intruders, (d) the protection of the public from unsecured zoo animals, (e) the availability of funds, and (f) the aesthetics of the zoological park.  Id. at ¶ 5.

15.  The National Zoo has not adopted formal standards for sign placement.  Signs generally are approved by management-level employees, including the Safety Manager, the Deputy Director, the Zoo's Chief of Police, and the Director of the Friends of the National Zoo. Id. at ¶ 6.

16.  On the date of the accident and for several years prior to the accident, the gate in issue had a sign posted on it indicating the hours the zoo grounds are open and that the zoo is closed on December 25.  Id. at ¶ 9.

17.  On the day of the accident – December 25 – the zoo was closed and the zoo gates were closed. Id. at ¶ 8.

Respectfully submitted,

_____/s/_____
JEFFREY A. TAYLOR , D.C. Bar # 498610
United States Attorney


_____/s/_____
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney


_____/s/_____
CLAIRE WHITAKER, D.C. Bar # 354530
ASSISTANT UNITED STATES ATTORNEY
Office of the U.S. Attorney - District f Columbia
Civil Division
501 3rd Street, 4th Floor
Washington, D.C. 20001
(202) 514-7137

Of Counsel:

Perri Rothemich, Esq
U.S. Department of the Interior
Office of the Solicitor

Christine Nicholson, Esq.
Smithsonian Institution
Office of the General Counsel