# Exhibit 5

# Declaration of James F. Hilton (Smithsonian Institution)

THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| DAVID A. HAYES, | ) | |
|     Plaintiff, | ) ) ) | Civil Action No. 05-01421 (PLF) |
| v. | ) ) | |
| UNITED STATES OF AMERICA | ) ) ) | |
|     Defendant | ) | |

### Declaration of James F. Hilton

I, James F. Hilton, make this declaration in lieu of an affidavit pursuant to 28 U.S.C. § 1746. I am aware that this declaration may be filed in the United States District Court for the District of Columbia, and that it is the legal equivalent of a statement under oath.

1. I am the Safety and Occupational Health Manager at the National Zoological Park of the Smithsonian Institution (the National Zoo), 3001 Connecticut Avenue NW, Washington, DC 20008. I have been so employed since June 2003. I report to the Deputy Director of the Zoo. My predecessor was Garrick Smith.

2. The gate allegedly involved in the accident is under the control of and is operated by the National Zoo. The gate is approximately 9 feet tall and 10 feet wide.

3. The gate in question was replaced after the accident, in 2004, for reasons unrelated to the accident. The new gate and fence were funded by federal money made available to the Smithsonian Institution for security upgrades after 9/11.

4. The National Zoo has full discretion as to what signs to post on the gate and on zoo property generally.

5. In exercising their discretion, zoo officials develop and post whatever signs they deem necessary to protect the public, the zoo, and its staff. Zoo officials take into account various policy considerations, such as (a) the prevention of potential terrorist acts, (b) the safety of trail users, zoo visitors and employees, (c) the protection of zoo animals, buildings, and grounds from intruders, (d) the protection of the public from unsecured zoo animals, (e) the availability of funds, and (f) the aesthetics of the zoological park.

6. The National Zoo has not adopted formal standards for sign placement. Signs generally are approved by management-level employees, such as myself, the Deputy Director, the zoo's Chief of Police, and the Director of the Friends of the National Zoo ("FONZ").

7. The gate in question must be closed and locked in order to secure the National Zoo grounds.

8. On the day of the accident, the zoo was closed and the zoo gates were closed.

9. For several years prior to the accident, and on the date of the accident, a sign was posted on the gate in question that indicated the hours the zoo grounds are open and that the zoo is closed on December 25.

10. As he bicycled toward the gate in question, the Plaintiff passed the Beach Drive gate, which was closed. The Beach Drive gate is larger than the gate in question. It is approximately 10 feet tall and 24 feet wide and located approximately 315 yards from the gate in question. For several years prior to the accident and on the date of the accident, a sign was posted next to the Beach Drive gate indicating what hours the zoo grounds are open and that the zoo is closed on December 25.

11. The Office of the Director establishes opening and closing times for the Zoo. The decision to close on Christmas Day is a Smithsonian-wide policy.

I declare under the penalty of perjury that the foregoing is true and correct based upon my knowledge, information, and belief, and based upon information provided by employees of the National Zoological Park.

Dated this 17 day of July, 2007

*James Hilton* (signature)

James F. Hilton
Manager, Safety and Occupational Health
National Zoological Park
The Smithsonian Institution
3001 Connecticut Avenue NW
Washington, DC 20008