IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DAVID A. HAYES )
 )
 )
          Plaintiff, )
 )
v. ) Civil Action No. 05-01421 (PLF)
 )
 )
UNITED STATES OF AMERICA, )
 )
          Defendant. )

## DECLARATION OF DAVID G. DIONNE

    I, DAVID G. DIONNE, make this declaration in lieu of an affidavit pursuant to 28 U.S.C. §1746. I am aware that this declaration may be filed in the United States District Court for the District of Columbia, and that it is the legal equivalent of a statement under oath.

    1. I have testified on deposition in this matter pursuant to my designation as an expert witness for the plaintiff, have personal knowledge of the matters hereinafter set forth and am competent to testify thereto.

    2. I am a graduate of the West Virginia University with a Bachelor of Science, Recreation and Parks – Wildlands Administration (1980). I have been employed by Anne Arundel County (Maryland) Department of Recreation and Parks for 25 years and for 20 years have served as Superintendent of Trails and Greenways. My responsibilities include oversight for operation, maintenance and safety of approximately 30 miles of multi-use (pedestrian, bicycle, roller blade and other non-motorized uses) pathways in the county as well as another 30 miles of pathways in the design and construction stage or about to go into the system. Other trail way systems around the country send staff members to my office for training in integrated trail management, including design, maintenance, safety, programming, community relations, visitor services, patrol, and volunteer services. I have written a series of technical and operations manuals for the county park systems, and many of the management practices, programs and policies that I have created are modeled by other agencies around the nation. A copy of my c.v. is attached as Exhibit A hereto.

    3. I am familiar with nationally recognized standards of care in 2003 for management of multi-use trails and trail systems, including standards relating to safety issues and, specifically, requirements for posting of warning signs and the use of other

devices or techniques to meet minimal requirements for the safety of members of the public while using such trails.

4. As Superintendent of Trails and Greenways for Anne Arundel County, Maryland, I also have occasion to coordinate activities with the National Park Service ("NPS") and am familiar with NPS standards for posting of warning signs and the use of other devices or techniques to meet minimal requirements for the safety of members of the public while participating in the use of multi-use recreational trails. NPS has published a manual, the NPS Sign Manual, Revised January 1988, which was in effect in 2003 and which set the minimum standards to be followed by NPS for posting warning signs or using other techniques or devices to provide for public safety. A copy of the NPS Sign Manual is attached as Exhibit B hereto.

5. The NPS Sign Manual states that it constitutes the official NPS supplement to the Manual on Uniform Traffic Control Devices (MUTCD) published by the Federal Highway Administration, U.S. Department of Transportation, and that the Manual and MUTCD are to be used by NPS to provide park managers with "recommended standards, specifications and procedures . . . ." Exhibit B hereto, p. 1 – 1.

6. Portions of the MUTCD relevant to this matter are attached as Exhibit C hereto.

7. I am familiar with and have personal knowledge of the general topography, roads, paths, signs, gates, and other features of the landscape in the area of Rock Creek Park where the east entrance to the National Zoo is accessed from Beach Drive and then traveling several hundred yards south along Beach Drive and the adjacent Rock Creek Park Trail to the point where Beach Drive enters a tunnel for two-way vehicular traffic with a narrow (approximately three foot wide) sidewalk for use by pedestrian and bicycle traffic primarily at times when the Trail is closed. My personal knowledge of the Area is based on site visits I made to the Area in April 2006 in connection with the preparation of my report for this matter.

8. I have reviewed the photographs attached as Exhibits B-1 through B-41 to the Declaration of David A. Hayes, dated August 24, 2007, which Mr. Hayes states fairly and accurately depict the general topography, roads, paths, signs, gates, and other features of the landscape in the area as he observed them both at the time of this incident on December 25, 2003 and during a recent return to the area in early August 2007.

9. According to the National Park Service ("NPS"), Beach Drive "serves as the primary north-south route through the northern portion of Rock Creek Park extending approximately 6.46 miles from the Maryland state line at the Park's northern boundary to its intersection with the Rock Creek and Potomac Parkway just south of the National Zoo." RECONSTRUCTION AND REHABILITATION OF BEACH DRIVE AND ROCK CREEK AND POTOMAC PARKWAY FROM P STREET TO CALVERT STREET, ROCK CREEK PARK, WASHINGTON, D.C., ENVIRONMENTAL ASSESSMENT AND ASSESSMENT OF EFFECT, National Park Service, dated February 7, 2006, p 41. The document was posted by NPS on

02/16/2006 at http://parkplanning.nps.gov/document. A copy of relevant portions of the document are attached as Exhibit D hereto.

10. According to NPS, the Rock Creek and Potomac Parkway ("Parkway") extends approximately 2.6 miles south from its intersection with Calvert Street to its intersection with Ohio Drive and Parkway Drive just south of the Theodore Roosevelt Bridge. Exhibit D hereto, p. 41.

11. The NPS has further characterized this area of Rock Creek Park as follows:

   a. "The [P]arkway is a limited-access facility that currently serves as a primary urban commuter route within the District of Columbia." Exhibit D hereto, p. 41.

   b. "Approximately 235,000 visits per week are made to the park by people driving through the park." Exhibit D hereto, p. 40.

   c. "In addition to motorized recreation, Rock Creek and Potomac Parkway and Beach Drive are also sources of non-motorized recreation. Beach Drive . . . is used by park visitors for activities such as walking, in-line skating, and bicycling. On average, 40,000 people a week use Beach Drive for recreational purposes." Exhibit D hereto, pp. 40 – 41.

   d. "Commuting has the greatest effect on traffic flows through Rock Creek Park with the highest traffic levels corresponding to the peak morning and evening commuting times. All lanes of the Rock Creek and Potomac Parkway are designated as one-way southbound during the morning commute period (6:45 A.M. to 9:30 A.M) and one-way northbound during the evening commute (3:45 P.M. to 6:30 P.M.) to accommodate individuals traveling to and from their work." Exhibit D hereto, p. 43.

   e. "Sections of Beach Drive and Rock Creek and Potomac Parkway carried from 5,200 to 25,000 vehicles and from 40,000 to 60,000 vehicles, respectively, during an average weekday." Exhibit D hereto, p. 43.

   f. "Daily traffic volumes varied very little during weekdays, when peak commuting conditions occur. Seasonal variations of traffic volumes in Rock Creek Park were very minor due to the high number of commuters using park roads, and the park's location within a large metropolitan community [citation omitted]." Exhibit D hereto, p. 43.

   g. "A 1997 highway traffic safety study in Rock Creek Park . . . . stated that the safety problems on park roads were excessive vehicle speed and aggressive driving tendencies. The high vehicle speeds contributed to safety problems for bicyclists and pedestrians, as well as making it almost impossible for a visitor to have a comfortable driving experience in the park." Exhibit D hereto, p. 45.

    h. "Non-motorized recreation users are also a concern along Rock Creek Park and Potomac Parkway and Beach Drive. Conflicts between vehicles and bicycles or pedestrians are commonplace throughout the park and parkway. The park trail system crosses the park roadway system at numerous points, forcing interaction between different visitor uses. This situation is exacerbated in areas where there are no pedestrian or bicycle facilities available, forcing bicyclists to ride in the road and pedestrians to walk along the should of the road (Robert Peccia & Associates 1997)." Exhibit D hereto, p. 46.

    i. "The DDOT investigated and identified potential pedestrian and bicycle safety improvements on the Rock Creek Trail from P Street to Broad Branch Road and at the Zoo Tunnel. The purpose is to rehabilitate the trail and provide a safe route through the Zoo and eliminate users meeting on the Tunnel's narrow bridge sidewalk. A range of alternatives will be developed and evaluated to determine the feasibility of a trail bridge." Exhibit D hereto, p. 51.

12. The Rock Creek Park Trail in the Area runs parallel and adjacent to Beach Road with a distance of approximately 20 feet separating the Trail from the road as depicted in the photographs attached as exhibits to Mr. Hayes' declaration. In the Area, the Rock Creek Park Trail is a high volume, inner city, multiuse pathway which is immediately adjacent to and parallels Beach Road which, itself, is a high volume, inner city commuter road way.

13. The NPS Sign Manual (Exhibit B hereto) states that since park roads "are not intended to provide fast and convenient transportation, nor designed or intended to serve as commuter routes . . . ," the Sign Manual and the MUTCD are to be utilized by Superintendents as "guidance in making management decisions on the design, location, and application of road signs and markings on park roads . . . ." Exhibit B hereto, p. 1 – 1.

14. As noted in paragraph 11, above, however, the NPS has specifically acknowledged that Beach Drive and the Rock Creek Park and Potomac Roadway are not standard NPS park roads but serve as a major commuter route in the center of a metropolitan area, including as many as 60,000 vehicles per day in the area where the incident in this case occurred.

15. The NPS Sign Manual further states: "Whenever there is a hazard that might reasonably be expected to result in injury to Service personnel or the visiting public, signs warning of the hazard must be installed." Exhibit B hereto, p. 4 – 4.

16. Attached as Exhibit E hereto are pages 194 – 207 of my deposition setting forth certain opinions I hold to a reasonable degree of professional certainty concerning this matter. I hereby adopt and incorporate that testimony as if fully set forth herein.

I declare under penalty of perjury that the foregoing is true and correct based upon my knowledge and information.

Dated this 4th day of September, 2007.

_____
David G. Dionne

428654v.1