UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DAVID HAYES, )<br>)<br>   Plaintiff, )<br>)<br>v. )<br>)<br>UNITED STATES, *et al.*, )<br>)<br>   Defendants. )<br>_____) | Civil No. 05-1421 (PLF) |

**DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS
OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

Defendant hereby replies to plaintiff's opposition to defendant's motion to dismiss or, in the alternative, for summary judgment based on the discretionary function exception of the Federal Tort Claims Act, 28 U.S.C. § 2675(a); 2680(a).

I. Cope v. Scott, 45 F.3d 445 (D.C. Cir. 1995) Does Not Dictate that the Discretionary Function Exception of the Federal Tort Claims Act is Inapplicable to this Case.

Plaintiff's primary argument is that this case is governed by Cope v. Scott. 45 F.3d 445 (D.C. Cir. 1995). Plaintiff's Opposition ("Pl. Opp.") at pp. 1-2, 4-6, 10-13.

Plaintiff begins his argument by admitting that the discretionary function doctrine shields the government from liability in a variety of cases "in deciding whether and, if so, how warning signs are to be posted or other measures taken for public safety where essential components of the decisional algorithm include preservation of places or great natural beauty, scenic wonder, and historic significance, or the protection of wildlife and plant species." Pl. Opp. at 5, see also n. 2. However, plaintiff asserts in this case that the Rock Creek Park Trail is no different from Beach Drive, the subject area of Cope. Id. at 7.

Indeed, plaintiff makes no attempt to address defendant's discussion of the two-part test of United States v. Gaubert, 499 U.S. 315 (1991), *i.e.,* (1) Is the conduct discretionary; (2) Is the discretion policy-driven? See Defendant's Motion to Dismiss or for Summary Judgment ("Defendant's Motion"), at pp. 11-18. He simply discounts the declarations submitted by defendant, substitutes his own and one of an expert, then urges that the posting of warning signs in this case [involving a bicycle accident on one of the Nation's bike paths] is not discretionary because it was not discretionary in Cope [involving Beach Drive, the heavily trafficked commuter thoroughfare]. However, as noted in defendant's dispositive motion, the facts in Cope are easily distinguished from the facts in this case. Indeed, the only connection between the two is the proximity of Beach Drive to the Rock Creek Trail.[1]

Cope provides plaintiff with no basis for relief. This Circuit in Cope recognized that "in certain circumstances, decisions will be exempt under the FTCA because they involve difficult policy judgments balancing the preservation of the environment against the blight of excess signs." 45 F.3d at 451. However, the Court concluded based on the record and the representations at oral argument, that decisions involving the posting of signs on Beach Drive was not discretionary. It found that the NPS "chose" to "manage [Beach Drive] in a manner more amenable to commuting through nature than communing with it." Id. It based this decision on such facts as the numerous "slippery when wet" signs, [and] no less than "twenty-three traffic control, warning, and informational signs" within a "half-mile stretch of road bracketing the curve on which the accident occurred – a stretch of road that carries 20,000

---

[1] Although, plaintiff suggests that the Trail is adjacent to Beach Drive, it is only adjacent to this roadway in certain areas. Indeed, at the location of the accident, the Trail was curving into the National Zoo grounds. See Map provided with Plaintiff's Declaration and Photographs.

vehicles daily." Id.

Plaintiff likens the Rock Creek Trail to this heavily traveled commuter road and asserts that the Trail is "virtually indistinguishable from Beach Drive as vehicle – pedestrian – bicycle – multiuse thoroughfares at the point where this incident occurred. . . . The same type and number of traffic control, safety and informational signs posted on Beach Drive and considered significant by the court in Cope are posted in the same area along the Trail." Pl. Opp. At p. 11. However, the facts before the Court do not support these conclusions. In order for the Court to adopt plaintiff's argument, it would have to conclude that the primary role of the Rock Creek Trail "is a commuter route through an urban park." Nothing in the record supports that finding. Even the plethora of photographs plaintiff provides do not convert the Trail into a "commuter route." Indeed, the photographs do not illustrate that the particular part of the Trail at issue in this case was overwhelmed with signage. They do more to present the Trail as the sylvan setting it was meant to offer and the defendant's sworn declarations describe. Moreover, expert testimony is simply not required for the Court to make the determination as to whether the Rock Creek Trail is or is not a commuter road. See cf, Pl. Opp. at n. 4. In fact, the record clearly supports defendant's position that it is not a commuter thoroughfare.

Plaintiff attempts to poke holes in the declarations of Coleman and Hilton. Pl. Opp. at pp. 7-10. However, there is no suggestion that the declarants have executed their declarations in bad faith and nothing in the declarations suggest that "policy judgments" were lacking. The declarations are detailed and make clear that the two components, the National Park Service ("NPS") and the Smithsonian Institution ("SI") considered matters such as safety, aesthetics, and costs. These are precisely the kinds of decisions Congress in adopting the FTCA intended to

shield. See United States v. Varig Airlines, 467 U.S. 797, 820(1984). As this Circuit noted in Abdulwali v. WMATA, 315 F.3d 302, 305 (D.C. Cir. 2003), "[j]udicial review 'in such decisionmaking through private tort suits would require the courts to 'second guess' the Transit Authority's policy judgments." (*citing* Varig Airlines, 467 U.S. at 820).

Plaintiff's own arguments support the fact that the placement of warning signs involves balancing economic, social, and political factors. On page 13 of his opposition, plaintiff states his opinion regarding cost of the sign, and that a sign could safely be placed. Thus, plaintiff himself is balancing safety considerations and financial considerations in coming to this conclusion. What may be cheap and safe to plaintiff may not be for the NPS, and it is up to NPS to determine and rank accordingly their priorities for cost and safety. This furthers defendant's argument that placement of warning signs requires the Park Superintendent to balance economic, political, and social issues.

### 3. The MUTCD and the NPS Sign Manual are Not Binding Documents.

On pages 11 and 12 of Plaintiff's Opposition, he asserts that there are guidelines which set forth a mandatory standard of care applicable to the use and placement of signage. However, such guidelines are not binding on the NPS or SI. One of the standards plaintiff relies on is the Manual on Uniform Traffic Control Devices (MUTCD).

This Circuit has held that MUTCD is more of a guidebook for the installation of signs rather than a "specific prescription" to be relied on by the NPS. Cope v. Scott, 45 F.3d at 451. The MUTCD uses the verbs "shall," "should," and "may" to describe specific conditions concerning traffic control devises. See Exhibit 7 at § 9A-7. "Shall" indicates a mandatory condition and "should" indicates an advisory condition which is recommended but not

mandatory. Id. "May" when used in the MUTCD indicates a permissive condition with no requirement for application intended. Id. Moreover, the MUTCD clearly states that its purpose is to provide guidance, as opposed to a legal requirement for the installation of bicyclist traffic control devises, and that a qualified traffic engineer should determine the application of devices on any bicycle facility before installation is made. Id. at 9A-1. Section 9B-1 of the MUTCD regarding the application of signs states that "[c]are should be taken not to install too many signs. A conservative use of regulatory and warning signs is recommended as these signs, if used to excess, tend to lose their effectiveness." Section 9B-13 regarding warning signs states that such signs "should be kept to a minimum because the unnecessary use of them to warn of conditions which are apparent tends to breed disrespect for all signs." Thus, these patently discretionary guidelines clearly do not rise to the level of "a specific mandatory directive" "specifically prescrib[ing]" a particular approach. See Cope v. Scott, 45 F.3d at 451 (holding that the MUTCD does not set forth a "specific prescription," as contemplated by Berkowitz, to be relied upon by the NPS). Rather, the decisions concerning signage at a particular location are site-specific and involve the exercise of professional judgment.

The NPS Sign Manual also provides guidance to "the individual park manager . . .[who] has the responsibility for determining whether or not a sign is necessary or appropriate at a given location." See Coleman Declaration (attached to Defendant's Motion) at ¶ 13. The NPS's policy is for the park manager to use his or her professional judgment "to intrude only minimally upon the natural or historic setting and to avoid a proliferation of signs" Id. at 14; see also ¶¶ 15. Based on the holding in Cope, plaintiff speculates here that the Sign Manual is now mandatory. Pl. Opp. at p. 12. But, Cope does not so dictate and does not support plaintiff's position.

5

I1.  Plaintiff's Expanded Failure to Inspect or Maintain the Trail Should be Rejected.

Plaintiff concedes that his claim before the Court is a "failure to warn" claim and not a failure to inspect or maintain the Rock Creek Park Trail, but suggests that the latter claims are subsumed into the former one.  Pl. Oppo. at p. 4, see also pp. 14-16.  Plaintiff should be estopped from making these new claims on exhaustion grounds as he was very much aware (as early as February 2004) that the NPS treated his (mother's) claim as one involving the gate which was maintained, not by the NPS, but by the SI.  That is why Ms. Hayes was referred to the SI.  The claim filed with the SI states, in pertinent part:

> ... I followed the trail around the curve but there was a gate across the trail.  There were no markings or warning signs that the trail was blocked and, in my effort to stop before smashing into the gate, I hurtled over the front of my bicycle.  The only warning sign (stating that the gate is closed on Christmas and during inclement weather) was on the gate itself which is useless for biker [sic] riders who were coming around the curve toward the gate. . .

As is apparent, no reference was made in this language to a "negligently maintained" trail.  The SI has no jurisdiction to maintain the Trail.  No objections or clarifications were made by plaintiff or his mother when the matter was referred to the SI four years ago.  Moreover, because of the referral, no NPS investigation was commenced into the new broader claims.  Any attempt to expand the claim before the Court into a claim involving the trail's terrain, ruts, potholes, rough spots, broken areas, or any other maintenance issue involving the Trail (or even the Rock Creek and Potomac Parkway or Beach Drive) should be rejected.   Accordingly, should plaintiff's claim survive defendant's argument that the discretionary function exception bars his claim, the Court should limit this litigation to the charge in the SF 95 regarding the lack of "markings or warning signs" immediately adjacent to the area of the gate to which plaintiff

refers. To do anything less would be to severely prejudice the NPS and unfairly give plaintiff an advantage in this litigation to which he is not entitled under the law. See Defendant's Motion at pp. 7-10.

                                     Respectfully submitted,

                                     /s/
                                   JEFFREY A. TAYLOR , D.C. Bar # 498610
                                   United States Attorney

                                     /s/
                                   RUDOLPH CONTRERAS, D.C. Bar # 434122
                                   Assistant United States Attorney

                                     /s/
                                   CLAIRE WHITAKER, D.C. Bar # 354530
                                   Assistant United States Attorney
                                   United States Attorneys Office
                                   Civil Division
                                   555 4th Street, N.W., Room E-4204
                                   Washington, D.C. 20530
                                   (202) 514-7137

Of Counsel:

Perri Rothemich, Esq
U.S. Department of the Interior
Office of the Solicitor

Christine Nicholson, Esq.
Smithsonian Institution
Office of the General Counsel