UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                          )
DAVID A. HAYES,                           )
                                          )
            Plaintiff,                    )
                                          )
    v.                                    )        Civil Action No. 05-1421 (PLF)
                                          )
UNITED STATES,                            )
                                          )
            Defendant.                    )
_____)


OPINION

        Plaintiff David Hayes brings this negligence suit under the Federal Tort Claims

Act ("FTCA"), 28 U.S.C. §§ 2671, *et seq.*, alleging personal injuries caused by the government's

failure to warn of and maintain against dangerous conditions on its property.  See Compl.

¶ 12(a)-(e).  This case is before the Court on the motion of the defendant, the United States, to

dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil

Procedure, for failure to state a claim under Rule 12(b)(6), or, alternatively, for summary

judgment under Rule 56.[1]  Upon consideration of the motions papers and the entire record, the

Court will grant the motion in part and deny it in part.

_____

[1]         The briefs submitted in connection with this motion include: Defendant's Motion
to Dismiss or, in the Alternative, for Summary Judgment ("Def.'s Mot."); Plaintiff's Opposition
to Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment ("Pl.'s Opp.");
Defendant's Reply to Plaintiff's Opposition to Defendant's Motion to Dismiss or, in the
Alternative, for Summary Judgment ("Def.'s Reply").  The depositions and declarations to which
the Court will refer are: Declaration of David A. Hayes ("Hayes Decl."), Pl.'s Ex. 1; Declaration
of David G. Dionne ("Dionne Decl."), Pl.'s Ex. 2; Deposition of David G. Dionne ("Dionne
Dep."), Hayes Decl. Ex. C; Declaration of Adrienne Coleman ("Coleman Decl."), Def.'s Ex. 2;
Declaration of James F. Hilton ("Hilton Decl."), Def.'s Ex. 5.

I.  BACKGROUND

Rock Creek Park is a federal park within the District of Columbia.  The Rock Creek Park Trail is a recreational trail designed for activities such as walking and bicycling.  See Coleman Decl. ¶ 5.  The events underlying this case took place on a portion of the trail that winds through Rock Creek Park between the National Zoo tunnel and the east entrance of the Zoo.  See Hayes Decl. ¶ 4 (citing Hayes Decl. Exs. B-1 to B-41); Def.'s Mot. at 5; see also Hilton Decl. ¶ 10 (stating that the distance between the gate discussed below and the east entrance of the Zoo is approximately 315 yards).  This stretch of the trail runs parallel to Beach Drive, a two-lane commuter route that carries high volumes of traffic through Rock Creek Park on a daily basis. See Nat'l Park Serv., U.S. Dep't of the Interior, Envtl. Assessment for the Reconstruction and Rehab. of Beach Drive & Rock Creek and Potomac Parkway from P St. to Calvert St. 41, 43 (2006) ("EA Report"), Dionne Decl. Ex. D.  Throughout the park and parkway, including sections of the trail that run close to Beach Drive, "conflicts," like traffic accidents, are "commonplace" between vehicles and bicyclists or pedestrians.  See id. at 46-47.

According to the complaint, plaintiff was riding his bicycle on the Rock Creek Park Trail on Christmas Day, December 25, 2003.  See Compl. ¶ 5.  He passed the eastern entrance to the Zoo and continued south along the trail towards the Zoo tunnel.  See Hayes Decl. ¶ 4 (citing Hayes Decl. Exs. B-1 to B-41); Pl.'s Opp. at 9-10; Def.'s Mot. at 5.  At the Zoo tunnel, the trail diverged in two directions, with a narrow portion following Beach Drive through the tunnel and the remaining portion curving west, away from the tunnel.  See Hayes Decl. ¶ 4(y).  Plaintiff took the portion of the trail that curves west.  See Compl. ¶¶ 6-7; Hayes Decl.

2

¶ 8.  Plaintiff claims that as he rounded the curve, he saw a closed, chain-linked gate that blocked the path.  See Compl. ¶ 7; Hayes Decl. ¶ 8; Def.'s Statement Of Facts To Which There Is No Genuine Dispute ("Def.'s Statement of Facts") ¶ 17.  He further claims that he applied the brakes of his bicycle in an attempt to avoid hitting the gate and was thrown off his bicycle and to the ground.  See Compl. ¶ 9; Hayes Decl. ¶ 5.

The Smithsonian Institution, which oversees the Zoo, has jurisdiction over the chain-linked gate.  See Hilton Decl. ¶ 2; Hayes Decl. ¶ 4(dd)-(ee); Def.'s Reply at 2 n.1.  The National Park Service ("NPS") has jurisdiction over the portion of the Rock Creek Park Trail leading up to the gate.  See Coleman Decl. ¶ 2.  At the time of the alleged accident, and for many years preceding it, a sign was posted on the fence next to the gate, stating that the National Zoo is closed on December 25.  See Compl. ¶ 8; Hayes Decl. ¶ 4(ee); Def.'s Statement of Facts ¶ 16.

On November 5, 2004, plaintiff filed an administrative claim with the Smithsonian, alleging personal injuries and seeking $250,000 in damages.  See Standard Form 95, Claim for Damage, Injury, or Death (Nov. 5, 2004) ("SF-95") at 1, Def.'s Ex. 3.  The Smithsonian denied the claim on April 26, 2005.  See Letter from John E. Huerta, General Counsel for the Smithsonian (Apr. 26, 2005) ("Denial Letter"), Def.'s Ex. 4.  This lawsuit followed.

## II.  DISCUSSION

Plaintiff presents two claims.  First, plaintiff alleges negligence arising from the government's failure to provide sufficient warning that the gate would be closed.  See Compl. ¶ 12(b)-(d).  Second, plaintiff alleges negligence arising from the government's failure to inspect

and maintain the area where the accident occurred.  See id. ¶ 12(a).

   The United States is immune from suit unless it waives its sovereign immunity through an act of Congress.  See F.D.I.C. v. Meyer, 510 U.S. 471, 475 (1994).  The Federal Tort Claims Act provides such a waiver in civil damages actions based on "injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment[.]"  28 U.S.C. § 1346(b); see F.D.I.C. v. Meyer, 510 U.S. at 475 (FTCA waived sovereign immunity of the United States for "certain torts" committed by federal employees).  A waiver of sovereign immunity, however, must be "strictly construed, in terms of its scope, in favor of the sovereign." Tri-State Hosp. Supply Corp. v. United States, 341 F.3d 571, 575 (D.C. Cir. 2003) (quoting Dep't of Army v. Blue Fox, Inc., 525 U.S. 255, 261 (1999)).  A party bringing suit against the United States bears the burden of proving that the government has unequivocally waived its immunity for the type of claim involved.  See Tri-State Hosp. Supply Corp. v. United States, 341 F.3d at 575.  The burden is on a party asserting jurisdiction under the FTCA to demonstrate that the claim asserted is the kind permitted by statute and that the conduct giving rise to the action occurred within the scope of the government employee's employment.  See 28 U.S.C. §§ 1346(b), 2680.

   The United States maintains that it has not waived sovereign immunity in this case.  See Def.'s Mot. at 7-18.  First, it argues that plaintiff has not exhausted his administrative remedies with respect to his failure to maintain claim and that he therefore has not met a necessary precondition of the FTCA.  See id. at 7-10.  Second, the government contends that the governmental acts challenged by plaintiff fall within the discretionary function exception to the

FTCA's waiver of sovereign immunity.  See id. at 10-18.  The Court addresses each of these points in turn.

This Court lacks subject matter jurisdiction over suits against the United States unless there has been a waiver of sovereign immunity.  See F.D.I.C. v. Meyer, 510 U.S. at 475. As a preliminary matter, the Court notes that while the government's motion is captioned "Motion to Dismiss or, in the Alternative, for Summary Judgment," the government's legal arguments are limited to the absence of a waiver by the United States of sovereign immunity. See Def.'s Mot. at 6-18.  It is clear, therefore, that the government's motion to dismiss is for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure, and not for failure to state a claim or for summary judgment.

### A.  Rule 12(b)(1) Standard

Federal courts are courts of limited jurisdiction.  They therefore may hear only cases entrusted to them by a grant of power contained in either the Constitution or in an act of Congress.  See, e.g., Beethoven.com LLC v. Librarian of Congress, 394 F.3d 939, 945 (D.C. Cir. 2005); Best v. United States, 522 F. Supp. 2d 252, 254 (D.D.C. 2007);  Srour v. Barnes, 670 F. Supp. 18, 20 (D.D.C.1987) (citing City of Kenosha v. Bruno, 412 U.S. 507, 511, (1973)).  The United States may be sued for money damages only when it has expressly waived its immunity from suit.  See F.D.I.C. v. Meyer, 510 U.S. at 475 (citing Loeffler v. Frank, 486 U.S. 549, 554 (1988)).  The question here is whether the FTCA provides a waiver of sovereign immunity by the United States, such that the Court has jurisdiction over the United States in this case.

Under Rule 12(b)(1), the plaintiff bears the burden of establishing subject matter jurisdiction. See Best v. United States, 522 F. Supp. 2d at 254; Brady Campaign to Prevent Gun Violence v. Ashcroft, 339 F. Supp. 2d 68, 72 (D.D.C. 2004) (citing Grand Lodge of Fraternal Order of Police v. Ashcroft, 185 F. Supp. 2d 9, 13 (D.D.C. 2001); Pitney Bowes, Inc. v. United States Postal Serv., 27 F. Supp. 2d 15, 18 (D.D.C. 1998)).  In determining whether to grant a motion to dismiss for lack of subject matter jurisdiction, the Court may either consider the complaint alone, or "the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." Herbert v. Nat'l Acad. of Science, 974 F.2d 192, 197 (D.C. Cir. 1992).  The Court must accept all of the factual allegations in the complaint as true, but may, in appropriate cases, consider certain materials outside the pleadings.  See Jerome Stevens Pharms., Inc. v. FDA, 402, F.3d 1249, 1253-54 (D.C. Cir. 2005).  While the complaint is to be construed liberally, the Court need not accept factual inferences drawn by plaintiff if those inferences are not supported by facts alleged in the complaint.  Nor must the Court accept plaintiff's legal conclusions.  See Best v. United States, 522 F. Supp. 2d at 255; Primax Recoveries, Inc. v. Lee, 260 F. Supp. 2d 43, 47 (D.D.C. 2003).

## B.  Administrative Exhaustion

The government argues that plaintiff failed to exhaust his administrative remedies with respect to his failure to inspect and maintain claim and that sovereign immunity therefore has not been waived with respect to this claim under the FTCA.  See Def.'s Mot. at 7-10.  It makes no such argument with respect to plaintiff's failure to warn claim.

A party asserting jurisdiction under the FTCA must satisfy administrative exhaustion requirements by "present[ing] the claim to the appropriate Federal agency."  28 U.S.C. § 2675(a); see McNeil v. United States, 508 U.S. 106, 113 (1993).  This presentment requirement "requires a claimant to file (1) a written statement sufficiently describing the injury to enable the agency to begin its own investigation, and (2) a sum certain damages claim."  GAF Corp. v. United States, 818 F.2d 901, 919 (D.C. Cir. 1987).  Because the FTCA is a limited waiver of the United States' sovereign immunity, this administrative exhaustion requirement is a jurisdictional prerequisite; and the Court lacks subject matter jurisdiction over common law tort claims against the United States for which a plaintiff has not exhausted his administrative remedies.  See Rasul v. Myers, 512 F.3d 644, 661 (D.C. Cir 2008); Simpkins v. District of Columbia, 108 F.3d 366, 371 (D.C. Cir. 1997) (citing Odin v. United States, 656 F.2d 798, 802 (D.C. Cir. 1981)).  The rationale is as follows: "Notice of an injury will enable the agency to investigate and ascertain the strength of a claim; the sum-certain statement of damages will enable it to determine whether settlement or negotiations to that end are desirable."  GAF Corp. v. United States, 818 F.2d at 919-20.

As noted, plaintiff asserts both a failure to warn claim (as to which the government acknowledges that he has exhausted his administrative remedies) and a separate failure to inspect and maintain claim.  As to this second claim, plaintiff asserts two theories.  First, plaintiff alleges that the government failed to maintain safe premises by closing the gate and blocking the path.  See Pl.'s Opp. at 16 (arguing that the blocked trail was a "dangerous condition").  Second, plaintiff argues that the government failed to maintain safe premises by not

7

implementing "safety measures" in light of the gate closure.  See id.[2]

Plaintiff's administrative claim form, the SF-95, clearly provided the government with notice of the first theory.  The form alleged that the gate closure obstructed the path, causing plaintiff to be thrown from his bike.  See SF-95 at 1.  With respect to the second theory, the alleged failure to implement "safety measures," see Pl.'s Opp. at 16, the question is murkier and its resolution more uncertain.  In view of the conclusion reached in Part II.C of this Opinion, however, the Court need not resolve it.

### C.  The Discretionary Function Exception

The government argues that the acts challenged by plaintiff constitute discretionary functions and thus are excepted from the waiver of sovereign immunity under the FTCA.  See Def.'s Mot. at 10-18.  The government moves to dismiss both the failure to maintain claim and the failure to warn claim on these grounds.  See id. at 10.

The limited waiver of immunity provided by the FTCA is subject to several exceptions, including the "discretionary function exception."  28 U.S.C. § 2680(a).  The statute

---

[2]         The language of the complaint is unclear as to what government conduct serves as the basis for plaintiff's failure to inspect and maintain claim.  See Compl. ¶ 12(a) (stating without explanation that the government was negligent in "[f]ail[ing] to inspect and maintain the property in a reasonable manner").  In his opposition brief, however, plaintiff argues that the claim is based on the failure of government employees to "adequately inspect[] the trail to determine whether the gate closure was a reasonable and safe procedure or whether further steps needed to be taken, i.e., placement of a warning sign or implementation of other safety measures."  Pl.'s Opp. at 15.  This interpretation is consistent with the complaint's discussion of the alleged accident.  See Compl. ¶¶ 5-9.  Thus, reading the complaint in the light most favorable to the plaintiff, see Kowal v. MCI Commc'ns Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994), the Court will interpret the complaint as setting forth two allegations under the failure to maintain claim: first, that the government created a hazardous condition by closing the gate and blocking the path, and second, that the government failed to protect users of the trail from this condition by not implementing "safety measures."

provides that the jurisdiction given to district courts under 28 U.S.C. § 1346(b)(1) does not apply

in cases where a claim is:

> based upon an act or omission of an employee of the Government,
> exercising due care, in the execution of a statute or regulation,
> whether or not such statute or regulation be valid, or based upon
> the exercise or performance or the failure to exercise or perform a
> discretionary function or duty on the part of a federal agency or an
> employee of the Government, whether or not the discretion
> involved be abused.

28 U.S.C. § 2680(a).  The rationale behind the discretionary function exception, as the Supreme

Court explained in United States v. Gaubert, is that "when established governmental policy, as

expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to

exercise discretion, it must be presumed that the agent's acts are grounded in policy when

exercising that discretion."  United States v. Gaubert, 499 U.S. 315, 324 (1991).  In such cases,

there is no waiver of sovereign immunity and the government is protected from suit.  By contrast,

if there is no discretionary function involved, the United States has waived its sovereign

immunity and the federal district courts have subject matter jurisdiction over the claim.

The Supreme Court has established a two-part test for determining whether the

government conduct challenged by a plaintiff falls under the FTCA discretionary function

exception.  See United States v. Gaubert, 499 U.S. at 322-23 (elaborating on a test established in

Berkovitz v. United States, 486 U.S. 531, 536-37 (1988)).  First, a court must look to the nature

of the act and whether it involves an "element of judgment or choice."  United States v. Gaubert,

499 U.S. at 322 (citing Berkovitz v. United States, 486 U.S. at 536).  The Court explained that

when a "federal statute, regulation, or policy specifically prescribes a course of action," there is

no judgment or choice involved and the discretionary function exception therefore does not apply

9

because "the employee has no rightful option but to adhere to the directive."  United States v.

Gaubert, 499 U.S. at 322 (quoting Berkovitz v. United States, 486 U.S. at 536).  "[I]f the

employee's conduct cannot appropriately be the product of judgment or choice, then there is no

discretion in the conduct for the discretionary function exception to protect."  Berkovitz v.

United States, 486 U.S. at 536.

    Assuming the conduct at issue involves an element of judgment, the Court then

must consider the second part of the test: whether that judgment is the kind of judgment that the

discretionary function was designed to shield.  The Supreme Court explained:

> Because the purpose of the exception is to "prevent judicial
> 'second-guessing' of legislative and administrative decisions
> grounded in social, economic, and political policy through the
> medium of an action in tort," when properly construed, the
> exception "protects only governmental actions and decisions based
> on considerations of public policy."

United States v. Gaubert, 499 U.S. at 323 (citing Berkovitz v. United States, 486 U.S. at 537);

see also United States v. S.A. Empresa de Viacoa Aerea Rio Grandense (Varig Airlines), 467

U.S. 797, 814 (1984).  In other words, "the discretionary function exception insulates the

Government from liability if the action challenged in the case involves the permissible exercise

of policy judgment."  Berkovitz v. United States, 486 U.S. at 537.  But if the government action

is not grounded in public policy concerns, "it is not immunized by the discretionary function

exception."  Shuler v. United States, 448 F. Supp. 2d 13, 18 (D.D.C. 2006).

    Here, plaintiff alleges that the government was negligent in failing to provide

sufficient warning regarding the closure of the gate and in failing to maintain safe premises by

closing the gate and thereby blocking the path.  See Compl. ¶ 12(a)-(d).  Plaintiff argues that

these omissions satisfy neither step of the Gaubert analysis and thus, are not insulated from suit

under the FTCA.  See Pl.'s Opp. at 4-16.

1.  Failure to Warn

The complaint first alleges that the government failed to provide sufficient
warning that the gate would be and was closed on December 25.  See Compl. ¶ 12(b)-(d).
Specifically, plaintiff argues that a warning sign should have been placed along the Rock Creek
Park Trail approximately 100 feet before the gate.  See Hayes Decl. ¶ 4(y) (citing Dionne Dep.'s
Ex. D).  Applying the first step of the Gaubert analysis, plaintiff argues that two documents, the
National Park Service Sign Manual ("Sign Manual"), Def.'s Ex. 6; Dionne Decl. Ex. B, and the
Manual on Uniform Traffic Control Devices ("MUTCD"), Dionne Decl. Ex. C, specifically
required employees of NPS and the Smithsonian to provide such a warning.  See Pl.'s Opp.
at 11-13.  The Court disagrees.

A review of the portions of the Sign Manual and the MUTCD provided by both
parties makes clear that these documents set forth only recommendations, not mandatory
standards regarding sign placement.  The first chapter of the Sign Manual, entitled "purpose and
applicability," states that the manual is merely a "guide," and that it is the "individual park
manager . . . [who] has the responsibility for determining whether or not a sign is necessary or
appropriate at a given location."  Sign Manual at 1-1, ¶¶ 1, 6.

Plaintiff points to the Sign Manual's discussion of "safety signs" in support of his
proposition that the manual leaves the government with no discretion regarding sign placement.
See Dionne Dep. at 195; Dionne Decl. ¶ 15.  That section states that "[w]henever there is a
hazard that might reasonably be expected to result in injury to Service personnel or the visiting
public, signs warning of the hazard must be installed."  Sign Manual at 4-4, ¶ 7.  This provision,

11

however, imposes no *specific* requirements regarding where signs must be placed. The determination of whether a hazard requiring a warning sign exists and, if so, how and where to provide the warning remains within the discretion and judgment of the individual park managers. See id. at 1-1, ¶ 6 ("The decision to utilize a particular sign at a particular location requires the professional judgment of the park manager – drawing upon available guides, resources, and traffic safety engineering expertise – and considering a variety of other factors, such as the appearance of the road as a whole and its relationship to the natural and/or historical environment through which it passes.").

Plaintiff makes much of the MUTCD's discussion of "end-of-roadway" conditions. See Dionne Dep. at 49. That discussion, however, states only that "[a]ppropriate advance warning signs *should* be used" – not that they *must* be used. See MUTCD § 3C.04 (emphasis added). The discussion, therefore, is merely a recommendation, not a mandatory standard which precludes a finding of discretion. As the District of Columbia Circuit has noted, the MUTCD serves "more as a guidebook for the installation of signs than a 'specific prescription' relied on by the Park Service." Cope v. Scott, 45 F.3d 445, 451 (D.C. Cir. 1995) (holding that a previous version of the MUTCD did not impose on NPS specific requirements regarding sign placement). The language in the MUTCD contemplates the weighing of policy considerations in making sign placement decisions. See, e.g., MUTCD § 2C.02 (stating that "use of warning signs should be kept to a minimum as the unnecessary use of signs tends to breed disrespect for all signs"). How its guidance is to be applied is a matter of judgment and discretion.

12

The conclusion that sign placement decisions are discretionary, however, does not end the Court's inquiry. In order for governmental conduct to fall within the protection of the discretionary function exception, the Court also must determine that the discretion involved is "of the nature and quality that Congress intended to shield from tort liability." United States v. Varig Airlines, 467 U.S. at 813. To be so shielded, the nature of the decision being challenged must have been "grounded in social, economic, and political policy[.]" United States v. Gaubert, 499 U.S. at 323 (citing Berkovitz v. United States, 486 U.S. at 537); see Macharia v. United States, 334 F.3d 61, 67 (D.C. Cir. 2003).

In this case, the government argues that decisions regarding sign placement in Rock Creek Park involve the balancing of economic, engineering and aesthetic concerns. See Def.'s Mot. at 14-18. Specifically, the government argues that NPS employees consider factors such as: (a) the policy of minimal intrusion upon the natural and historical setting of the surrounding area, (b) the policy of avoiding the proliferation of signs, (c) engineering judgment, (d) the safety of trail users, (e) aesthetics, (f) the enjoyment of trail users, and (g) budgetary constraints. See Def.'s Mot. at 14-15; Coleman Decl. ¶ 2, 4, 11, 14-15.[3] The government implies that the presence of these considerations in decision-making suffices to insulate these decisions from suit under the FTCA. This argument misses the point.

Under the second step of the Gaubert analysis, the question is not whether the challenged decision *involved* policy considerations but whether the nature of the decision is

_____

[3]    The government also argues that policy considerations are involved in deciding whether and in what manner to place signs on Zoo property. See Def.'s Mot. at 16-18; Hilton Decl. ¶ 5. Plaintiff's contention, however, is that a sign should have been placed along the portion of the Rock Creek Park Trail before the gate in question. See Hayes Decl. ¶ 4(y) (citing Dionne Decl.). This area is within the jurisdiction of NPS, not the Zoo or the Smithsonian. See Coleman Decl. ¶ 2.

*grounded* in such considerations.  See United States v. Gaubert, 499 U.S. at 324-25; Macharia v.

United States, 334 F.3d at 67; Cope v. Scott, 45 F.3d at 449.  While NPS may, in fact, *consider*

economic, engineering and aesthetic concerns in deciding whether and in what manner to place

signs along the portion of the Rock Creek Park Trail in question, the government has failed to

demonstrate how the nature of these sign placement decisions implicates and is grounded in

public policy concerns.

        In a case very similar to this one, the District of Columbia Circuit concluded that

sign placement decisions along a certain section of Beach Drive, also within Rock Creek Park,

were not grounded in policy concerns.  See Cope v. Scott, 45 F.3d at 446-47.  In Cope, the

plaintiff was injured in a car accident on Beach Drive.  The plaintiff sued the United States,

alleging that the stretch of road where the accident occurred had inadequate skid-resistence and

that the government failed to provide sufficient warning regarding this road condition.  See id.

The government, as here, argued that sign placement decisions along Beach Drive were exempt

from suit under the FTCA because such decisions involved engineering judgment, aesthetic

concerns, and economic considerations.  See id. at 451.  The court of appeals rejected these

arguments.  See id. at 449, 452.

        The court found that "engineering judgment" was not a "matter of policy" or an

"exercise of policy judgment."  See Cope v. Scott, 45 F.3d at 452 (citing Berkovitz v. United

States, 486 U.S. at 545).  The court also rejected the government's invocation of general

"economic considerations," reasoning that "[b]udgetary constraints . . . underlie virtually all

government activity," Cope v. Scott, 45 F.3d at 449 (quoting ARA Leisure Servs. v. United

States, 831 F.2d at 196), and that to permit general economic concerns to trigger the discretionary

function exception "would allow the exception to swallow the FTCA's sweeping waiver of sovereign immunity."  Id.

The court further held that "aesthetics" was not a reasonable policy concern along the half-mile stretch of Beach Drive involved in that case.  See Cope v. Scott, 45 F.3d at 452. The court reasoned that Beach Drive was not managed to facilitate the nature experience of park visitors; rather, it was managed as a commuter road.  See id.  The court found that numerous signs were already posted in the area and that NPS itself had already posted other warning signs, alerting drivers of safety hazards on the road.  See id.

The government in the instant case has failed to demonstrate how public policy considerations could reasonably affect sign placement decisions along the stretch of the Rock Creek Park Trail in question.  The "engineering judgment" and generalized "economic considerations" on which the government relies are of the same type rejected by the court of appeals in Cope.  See Cope v. Scott, 45 F.3d at 449, 452.  Furthermore, the government has failed to demonstrate how aesthetic considerations are implicated along the portion of the Rock Creek Park Trail involved in this case.  As in Cope v. Scott, the stretch of land involved here is not managed to facilitate the nature experience of park visitors.  See Cope v. Scott, 45 F.3d at 452.  The trail runs parallel to Beach Drive, with only about twenty feet between the two pathways.  See Dionne Decl. ¶ 12.  No physical barriers insulate this portion of the trail from Beach Drive's heavy day-to-day commuter traffic.  See Hayes Decl. ¶ 4(p)-(t) (citing Hayes Decl. Exs. B-16 to B-20); see also EA Report at 43 (stating that, between 1990 and 2004, sections of Beach Drive carried from 5200 to 25,000 vehicles during an average weekday).  The proximity of the trail is so close to Beach Drive in some areas that conflicts, including traffic accidents, are

"commonplace" between vehicles, bicyclists and pedestrians.  See id. at 46-47.

Furthermore, NPS already posts signs along the trail in an effort to alert trail users of hazardous conditions.  See Cope v. Scott, 45 F.3d at 452.  In the area where plaintiff alleges the government needed to erect a warning sign, a yellow sign has been posted for some time that cautions bicyclists using the trail to walk their bikes through the Zoo tunnel.  See Hayes Decl. ¶ 4(cc) (citing Hayes Decl. Ex. B-29).  And this is not the only sign in the area.  The east entrance of the Zoo, which is north of the gate in question, is filled with a number of signs that are adjacent to the trail.  See Hilton Decl. ¶ 10; Hayes Decl. ¶ 4(a)-(n) (citing Hayes Decl. Exs. B-1 to B-14).  A public announcement billboard also has been posted next to the trail and contains a variety of fliers and warnings.  See Hayes Decl. ¶ 4(o)-(q) (citing Hayes Decl. Exs. B-15 to B-17).

The government attempts to distinguish Cope v. Scott by arguing that Beach Drive is a "commuter thoroughfare," while the Rock Creek Park Trail is a recreational pathway on which vehicles are prohibited.  See Def.'s Mot. at 18; Def.'s Reply at 3.  Nothing in the language of Cope v. Scott, however, limits its application to roads permitting vehicle traffic.  See Cope v. Scott, 45 F.3d at 452.  Rather, the reasoning of the decision extends to situations where, as here, the exercise of the claimed government discretion is unreasonable.  See id.; see also Beckford v. United States, 950 F. Supp. 4, 9 (D.D.C. 1997).  Because sign placement decisions along the portion of the Rock Creek Park Trail involved in this case are not insulated from suit under the discretionary function exception of the FTCA, the Court will deny the government's motion to dismiss plaintiff's failure to warn claim.

16

2.   Failure to Maintain

As discussed above, plaintiff's failure to maintain claim is based on the allegation that, by closing the gate in question, the government created a dangerous condition on its property.  <u>See</u> Pl.'s Opp. at 15.  Plaintiff, however, has failed to respond to the government's argument that the discretionary function exception applies to the decision of whether and when to close the gate to the Zoo.  <u>See</u> Def.'s Mot. at 16 (arguing that the Smithsonian has complete discretion regarding Zoo hours and that the gate in question must be closed whenever the Zoo is closed "in order to secure the National Zoo grounds"); Pl.'s Opp. at 14-16.  The Court therefore will grant as unopposed the government's motion to dismiss plaintiff's failure to maintain claim. <u>See</u> Local Civil Rule 7(b).[4]

III.   CONCLUSION

For the reasons set forth in this Opinion, the Court will dismiss plaintiff's failure to inspect and maintain claim.  The Court concludes, however, that there is no governmental immunity with respect to plaintiff's failure to warn claim.  It therefore will deny the government's motion to dismiss that claim.

An Order consistent with this Opinion will be issued this same day.

_____/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE:  March 28, 2008

---

[4]      Plaintiff was aware that the government moved to dismiss the failure to maintain claim under the discretionary function exception, <u>see</u> Pl.'s Opp. at 4, yet failed to respond to this argument in his opposition brief.

17